IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES KOZLOWSKI,                          :
                                          :
            Plaintiff,                    :
      v.                                  :      CIVIL ACTION NO. 3:18-CV-353
                                          :      (JUDGE MARIANI)
JFBB SKI AREAS, INC., d/b/a               :
JACK FROST and BIG BOULDER               :
SKI RESORTS,                              :
                                          :
            Defendant.                    :

## MEMORANDUM OPINION
### I. INTRODUCTION

Here the Court considers the parties' dispute regarding discovery of financial

information.  The parties disagree whether the discovery sought is timely requested and

relevant to the ongoing litigation.  (Docs. 50, 58, 63, 68.)  For the reasons discussed below,

the Court concludes that the discovery requests are not timely and, although a parties'

wealth is a relevant factor in considering a punitive damages award, such evidence is not

required and Plaintiff is not foreclosed from seeking an award of punitive damages.

### II. BACKGROUND

Plaintiff filed this action on February 13, 2018, against Peak Resorts, Inc., d/b/a Jack

Frost & Big Boulder Ski Resorts and JFBB Ski Areas, Inc., d/b/a Jack Frost & Big Boulder

Ski Resorts, asserting one count of negligence based on injuries he sustained in a ski

accident at Big Boulder.  (Doc. 1.)  On June 11, 2018, the parties filed the Stipulation to

Dismiss and Amend Caption in which they stipulated and agreed to dismiss Peak Resorts,

Inc., d/b/a Jack Frost & Big Boulder Ski Resorts as a defendant in the action. (Doc. 14 at

1.) The Stipulation further stated that

> [t]his dismissal and amendment is made pursuant to the agreement of counsel. It is further stipulated and agreed the dismissal is without prejudice to the Plaintiff in that if discovery reveals that the Defendant dismissed herein had any involvement or responsibility for the accident or damages subject of the instant dispute, then, upon notice to defense counsel, it can be renamed and be made a party to this lawsuit regardless of the statute of limitations.

(*Id*. at 1-2.) By Order of June 12, 2018, the Court approved the Stipulation. (Doc. 15.)

On October 23, 2018, Plaintiff filed the Motion for Leave to Amend Complaint to

Include Allegations of Gross Negligence and Reckless Conduct. (Doc. 21.) Defendant's

counsel opposed the filing of the motion. (*Id*. at 6.) On November 6, 2018, the parties filed

the Stipulation to Amend Complaint and Include Allegations of Gross Negligence and

Reckless Conduct in which they indicate that, pursuant to Federal Rule of Civil Procedure

15(a)(2), Defendant consented to the amendment sought in Plaintiff's October 23, 2018,

Motion. (Doc. 22 at 1.) Based on the Stipulation, the Court issued an Order on November

7, 2018, granting Plaintiff leave to amend the complaint to add allegations of gross

negligence and reckless conduct. (Doc. 23.)

Plaintiff filed his Amended Complaint on November 8, 2018. (Doc. 24.) The

Amended Complaint contains two counts: Count I for Negligence and Count II for Gross

Negligence/Recklessness. (*Id*.)

On January 31, 2019, Defendant filed the Motion for Summary Judgment on Behalf

of Defendant JFBB Ski Areas, Inc., seeking summary judgment in its favor on both claims

contained in Plaintiff's Amended Complaint.  (Doc. 30.)  In the Memorandum Opinion

addressing Defendant's motion issued on December 12, 2019, the Court set out the

following summary of the case:

> The above captioned matter stems from a skiing accident that occurred on January 15, 2017, at Big Boulder Ski Resort ("Big Boulder").  (Doc. 30 ¶ 1.)  . . . Plaintiff states that he was skiing at Big Boulder and, as he came to an intersection of trails, he followed tracks which led to an embankment at the edge of a catwalk.  (Doc. 24 ¶¶ 14-17.)  Plaintiff asserts that, as he skied down the embankment, he suddenly and unexpectedly collided with partially exposed snowmaking pipes which could not be seen from a reasonably safe distance in the area where he was skiing.  (*Id.* ¶¶ 18-20.)  He alleges that he was rendered unconscious as a result of the collision and had to be dug out from under the pipes before he was transported to the hospital by ambulance.  (*Id.* ¶ 21.)

(Doc. 44 at 1.)  The Court denied Defendant's motion as to the negligence claim, finding

that "issues of fact and credibility exist which preclude summary judgment on the issue of

whether Plaintiff's injury resulted from a risk inherent to the sport of downhill skiing which

Plaintiff must be conclusively found to have assumed."  (*Id.* at 18.)   The Court denied

Defendant's motion as to the gross negligence/recklessness claim, finding that

> this is not a case where the Court can determine at this stage of the proceedings that the issues of gross negligence and/or recklessness can be decided as matter of law, i.e., the Court cannot conclude that the case is entirely free from doubt, and no reasonable jury could find gross negligence.

(*Id.* at 22 (internal quotation and citation omitted).)

With the denial of Defendant's motion, the Court scheduled a telephone conference

to set this matter for trial (Doc. 45 ¶ 2), after which the Court issued an Order on December

20, 2020, establishing the pre-trial schedule and setting the trial for June 8, 2020 (Doc. 47 ¶

1).

Plaintiff apprised the Court of the discovery dispute at issue here by correspondence

dated April 22, 2020.  (Doc. 50.)   Plaintiff's counsel informed the Court that Defendant

objected to Plaintiff's request for financial discovery and did not provide substantive

answers or responses to the discovery Plaintiff had served on January 23, 2020.  (Doc. 50

at 1-2.)  Specifically, Plaintiff stated as follows:

> Plaintiff served Defendant with punitive damages interrogatories and requests
> for the production of documents ("financial discovery"). This financial discovery
> requested the current financial wealth/worth of Big Boulder and Vail Resorts,
> Inc., which assumed Big Boulder's liabilities through a stock purchase in
> September 2019. On 2/24/20, Big Boulder objected to Plaintiff's financial
> discovery and provided no information or documents. The primary basis for Big
> Boulder's objections was that the financial discovery was not timely. Big
> Boulder also objected to the relevance of the discovery and on the basis that
> Vail Resorts is not a party to the lawsuit.

(Doc. 50 at 2.)  Plaintiff asserts that "the financial discovery is appropriate and relevant to

Plaintiff's gross negligence/reckless conduct claim. As punitive damages are recoverable

under such an action and the financial worth is a factor that a jury should consider when

awarding punitive damages, Plaintiff is entitled to discovery related to Defendant's financial

worth." (*Id.*)  Plaintiff further asserts that financial discovery related to Vail Resorts, Inc.,

("Vail") is appropriate and relevant because Vail assumed Defendant's liabilities when it

purchased Defendant in September 2019 and the financial worth a jury should consider is

the current net worth at the time of trial.  (*Id.*)

By Order of April 23, 2019, the Court directed Defendant to respond to Plaintiff's correspondence and set a Telephone Discovery Conference for April 29, 2020.  (Doc. 51.)

In the April 27, 2020, responsive correspondence, Defendant stated that this is a "negligence case and there is nothing about the facts of this case that point to any of the types of conduct that would even suggest consideration of punitive damages. In any case, the discovery is untimely and oppressive at this point as the case is largely ready for trial." (Doc. 58 at 1.)  Defendant specifically points to the facts that "punitive damages were not identified as damages or contained in the prayer for relief . . . [and] Fact Discovery closed on December 1, 2018." (*Id.* at 2 ¶¶ 5, 6.)

The parties argued their respective positions at the Telephone Discovery Conference held on April 29, 2020.  Plaintiff asserted that he did not need to specifically plead a claim for punitive damages because such damages are available with his gross negligence/ recklessness claim and the request for discovery was made shortly after the Court decided the summary judgement motion which allowed the gross negligence/recklessness claim to go forward.  Defendant asserted that Plaintiff needed to plead punitive damages so the discovery sought is not relevant and Plaintiff has provided no basis for the Court to conclude that his discovery request is timely.  At the close of the Conference, the Court granted Plaintiff an opportunity to file a supplemental letter setting forth any case law supporting the argument that a plaintiff can pursue a claim for punitive damages when a complaint does

not specifically assert such a claim for relief.   The Court also granted Defendant an opportunity to respond.

The parties responded with their correspondence of May 1, 2020, and May 5, 2020, each providing support for their respective positions.  (Docs. 60, 63.)

## III. ANALYSIS

In considering the parties' arguments on the relevance and timeliness of the financial discovery requested, the Court will address three questions.  First, is Plaintiff correct that no claim for punitive damages need be pled to assert a claim for punitive damages at trial?  Second, is Plaintiff untimely in his request for financial discovery?  Third, if Plaintiff can pursue a claim for punitive damages, can he do so without evidence of Defendant's wealth?

## A.  Pleading Punitive Damages

Plaintiff contends "that punitive damages may be awarded when a complaint does not separately request punitive damages but alleges facts sufficient for a punitive damages award," citing Federal Rule of Civil Procedure 54(c), caselaw interpreting the rule, and section 908(2) of the Restatement (Second) of Torts.  (Doc. 63 at 2 (citing *Griffith Laboratories U.S.A., Inc. v. Pomper*, 607 F. Supp. 999, 1001 (S.D.N.Y. 1985) (citing F.R.C.P. 54(c) and *Guillen v. Kuykendall*, 470 F.2d 745, 747-748 (5d Cir. 1972)); *Evans Products Co. v. W. Am. Ins. Co.*, 736 F.2d 920, 923 (3d Cir. 1984)).)  Defendant responds that "Rule 54 does not save Plaintiff" based on restrictions on the relief that may be granted under the rule.  (Doc. 68 at 4-7 (citing *Evans*, 736 F.2d 920; *Cioffe v. Morris*, 676 F.2d 539,

541 (11ᵗʰ Cir. 1982)).)  The Court concludes that Rule 54(c) and relevant caselaw support the conclusion that punitive damages may be awarded in the factual scenario presented here.

Federal Rule of Civil Procedure 54(c) addresses "Demand for Judgment; Relief to Be Granted" and provides as follows: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.  Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).

The Third Circuit Court of Appeals addressed the parameters of Rule 54(c) in *Evans Products Co. v. W. Am. Ins. Co.*, 736 F.2d 920, 923 (3d Cir. 1984), a case upon which both parties rely (Doc. 63 at 2; Doc. 68 at 5-6):

> Fed. R. Civ. P. 54(c) requires that the judgment entered shall grant the relief to which a party is entitled, even when such relief was not demanded in the pleadings.
>
> Not unexpectedly, Fed. R. Civ. P. 54(c) has been used to grant relief based on theories of recovery different from those theories set forth in the pleadings. . . .
>
> This does not mean, however, that there are no restrictions on the relief that may be granted under Fed. R. Civ. P. 54(c). What a court may do ultimately is limited by fundamental notions of due process and fair play. *Sylvan Beach, Inc. v. Koch,* 140 F.2d 852, 861–862 (8th Cir.1944). Fed. R. Civ. P. 54(c) permits relief based on a particular theory of relief only if that theory was squarely presented and litigated by the parties at some stage or other of the proceedings. *Cioffe v. Morris,* 676 F.2d 539, 541 (11th Cir.1981). Put another way, relief may be based on a theory of recovery only if the theory was presented in the pleadings or tried with the express or implied consent of the parties. *Monod v. Futura, Inc.,* 415 F.2d 1170, 1174 (10th Cir.1969).

When relief is based on a theory of recovery not raised in the pleadings, the requirements of Fed. R. Civ. P. 15(b) may come into play. *Cioffe,* 676 F.2d at 541. Fed. R. Civ. P. 15(b) requires that unpled issues which are tried with the express or implied consent of the parties are to be treated as if they were raised in the pleadings. The court shall permit the pleadings to be amended to conform to the evidence offered when the presentation of the merits of the action will be subserved and the opposing party will not thereby be prejudiced.

The primary consideration in determining whether leave to amend under Fed. R. Civ. P. 15(b) should be granted is prejudice to the opposing party. *See United States v. Hougham,* 364 U.S. 310, 315, 81 S.Ct. 13, 17, 5 L.Ed.2d 8, 13 (1960). The principal test for prejudice in such situations is whether the opposing party was denied a fair opportunity to defend and to offer additional evidence on that different theory. *Universe Tankships, Inc. v. U.S.A.,* 528 F.2d 73, 76 (3d Cir.1975); *see also Cioffe,* 676 F.2d at 542. The propriety of granting leave to amend under Fed. R. Civ. P. 15(b) and of granting relief under Fed. R. Civ. P. 54(c) depend on basically similar considerations.

736 F.2d at 923-24.

Under *Evans*, the first question is whether Plaintiff's claimed entitlement to pursue a claim for punitive damages is "based on a particular theory of relief" which has been "squarely presented . . . at some stage or other of the proceedings." 736 F.3d at 923.  As discussed below, courts addressing this issue have concluded that where the operative complaint states a cause of action that allows for punitive damages, the Rule 54(c) standard is satisfied.

The United States District Court for the Eastern District of Wisconsin addressed this issue at length in *Newell v. State of Wisconsin Teamsters Joint Council No. 39*, Civ. A. No. 05-C-552, 2007 WL 2874938 (E.D. Wi. Sept. 28, 2007).  Specifically, the district court analyzed the application of Rule 54(c) to a plaintiff's request for punitive damages when an

explicit demand was not made in the complaint, reviewing "numerous District Court and Circuit Court of Appeals decisions that . . . squarely addressed the issue." *Id.* at *2.   Based on the extensive review of relevant authority, *Newell* concluded that "a plaintiff may recover punitive damages pursuant to Rule 54(c) only if sufficient facts to support such an award are alleged in the complaint.  *Id.* at *4 (listing cases).  "In order to recover under Rule 54(c), it is not necessary for the plaintiff to explicitly demand punitive damages; however, absent an explicit demand, the complaint must contain sufficient allegations to inform the defendant that punitive damages are on the table, so to speak.  . . . The availability of punitive damages depends on the specific conduct alleged." *Id.*  For example, where the cause of action allows for punitive damages, language in the complaint that a defendant acted in reckless disregard for the plaintiff's interests would suffice.  *Id.* at *4-5.

"In Pennsylvania, punitive damages are available as a remedy for negligence actions."  *Goodfellow v. Camp Netimus, Inc.*, No. CV 3:16-1521, 2017 WL 1738398, at *9 (M.D. Pa. May 4, 2017) (internal quotation omitted; citing *inter alia Hutchinson ex rel. Hutchinson v. Luddy*, 870 A.2d 766, 772–73 (Pa. 2005)).  "This remedy is only available in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Id.*  *Goodfellow* concluded that the plaintiffs' allegations of recklessness in their amended complaint would be enough to state a "plausible" claim for punitive damages under Pennsylvania law.  *Id.*

Here Plaintiff asserts that his claim for recklessness allows him to recover punitive damages.

> In *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984), the Pennsylvania Supreme Court adopted Section 908(2) of the Restatement (Second) of Torts, which governs the award of punitive damages and reads:
>
>> Punitive Damages (2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant. Count II of Plaintiff's Amended Complaint includes a claim for recklessness and allegations that Defendant acted recklessly and with wanton disregard for the safety of Plaintiff. Doc. 24 at 9-14.

(Doc. 63 at 2-3.)

In his Amended Complaint, Plaintiff's claim for gross negligence/recklessness specifically stated that Defendant acted in "wanton disregard" for the safety of skiers in several ways (Doc. 24 ¶ 42(b)-(d)) and "[a]s a direct and proximate result of the grossly negligent and/or reckless conduct of Defendant, Mr. Kozlowski sustained severe pain and suffering, anxiety, humiliation, mental anguish and distress, and the loss of life's pleasures, and will continue to suffer such losses in the future, for all of which damages are claimed" (*id.* ¶ 46). Though Defendant asserts that "nothing about the facts of the case point to any of the types of conduct that would even suggest consideration of punitive damages" (Doc. 58 at 1), relevant authority indicates that the language of the Amended Complaint should have alerted Defendant that it could be liable for punitive damages if Plaintiff adduced

evidence to support the allegations that Defendant acted in wanton disregard for the safety of its patrons.  Further, as noted above, the Court stated in its summary judgment Memorandum Opinion that

> this is not a case where the Court can determine at this stage of the proceedings that the issues of gross negligence and/or recklessness can be decided as matter of law, i.e., the Court cannot conclude that the case is entirely free from doubt, and no reasonable jury could find gross negligence.

(Doc. 44 at 22 (internal quotation and citation omitted).)  Thus, from both the Amended Complaint and the Court's Memorandum Opinion, Defendant should have known that Plaintiff's entitlement to pursue a claim for punitive damages is "based on a particular theory of relief" which has been "squarely presented . . . at some stage or other of the proceedings."[1] *Evans*, 736 F.3d at 923.

---

[1]  With this conclusion, the Court rejects Defendant's assertion that "Plaintiff's counsel disingenuously argues that their claims for gross negligence and recklessness serve as the underpinnings of their claim for punitive damages." (Doc. 68 at 7.)  Defendant provides no citation to support the conclusion and the Court finds it inconsistent with the authority discussed in the text.  Defendant's assertion that "they are two separate claims under the law of Pennsylvania" (*id.*) is also unsupported.  Defendant provides no citation or argument and the law of Pennsylvania contradicts Defendant's conclusory statement:

> Pennsylvania courts have repeatedly held that a claim for punitive damages is not a separate cause of action.  *See, e.g., Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 802 (1989) ("If no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages is only an *element* of damages."); *Nix v. Temple Univ. of Commonwealth Sys. of Higher Educ.,* 408 Pa.Super. 369, 596 A.2d 1132, 1138 (1991) ("A request for punitive damages does not constitute a cause of action in an[d] of itself."); *Shanks v. Alderson,* 399 Pa. Super. 485, 582 A.2d 883, 885 (1990) ("The right to punitive damages is merely an incident to a cause of action and not a cause of action in and of itself."); *Robbins v. Cumberland County Children and Youth Servs.* 802 A.2d 1239, 1253 (Pa. Commw. Ct.2002) ("[P]unitive damages are a form of relief, not a separate cause of action under Pennsylvania law.").

*Jefferies v. Ameriquest Mortg. Co.,* 543 F. Supp. 2d 368, 390 (E.D. Pa. 2008).

With this determination, the Court need not address the second step of the analysis set out in *Evans.*  Because the Court concludes that relief in the form of punitive damages is based on a theory of recovery raised in the pleadings--Plaintiff's gross negligence/recklessness claim—this is not a case where "relief is based on a theory of recovery not raised in the pleadings" and "the requirements of Fed. R. Civ. P. 15(b) may come into play," including whether the opposing party will be prejudiced by granting leave to amend.  *Evans*, 736 F.2d 924 (citing *Cioffe*, 676 F.2d at 541).  Despite this conclusion, because Defendant raises the issue of prejudice and does not confine it to the second step of the *Evans*' Rule 54(c) inquiry, the Court will briefly address prejudice in the circumstances presented here.

Defendant asserts that several cases support the proposition that "Rule 54(c) does not apply 'where the failure to plead the relief requested prejudices the opposing party.'" (Doc. 68 at 7 (quoting *Griffith*, 607 F. Supp. at 1001 (citing *Evans*, 736 F.2d 920; *International Harvester Credit Corp. v. East Coast Truck,* 547 F.2d 888, 891 (5th Cir.1977)).)  The Court does not find that the quoted material impacts the Court's determination that Plaintiff is entitled to pursue a claim for punitive damages despite not having specifically pled an entitlement to this form of relief.

In *Griffith*, the defendants argued that the plaintiff was precluded from recovering punitive damages under Federal Rule of Civil Procedure 54(c) because the complaint made no such demand.  The defendants asserted that to allow the plaintiff to recover punitive

damages would be substantially prejudicial to them because, if punitive damages had been specifically pleaded in the complaint, they would have put in evidence on the issue of their actual malice during the liability trial.  The court concluded that the plaintiff's failure to plead punitive damages did not bar an award of punitive damages under Rule 54(c) based on the language of the rule and its interpretation set out in *Guillen v. Kuykendall,* 470 F.2d 745 (5th Cir. 1972), where the Fifth Circuit construed the rule "to permit the award of punitive damages when a complaint did not separately plead for them but did allege facts sufficient to support a punitive damages award." *Griffith*, 607 F. Supp. At 1001 (citing *Guillen*, 470 F.2d at 748*).  Griffith* went on to state that "[a]n exception does exist to awarding damages under Rule 54(c) where the failure to plead the relief requested prejudices the opposing party." *Id.* (citing *International Harvester Credit Corp. v. East Coast Truck,* 547 F.2d 888, 891 (5th Cir.1977); *Evans Products Co. v. West American Insurance Co.,* 736 F.2d 920, 924 (3d Cir.1984); *Bernard v. Florida East Coast Railway Co.,* 624 F.2d 552, 555 (5th Cir.1980); 6 J. Moore, Moore's Federal Practice ¶ 54.62 (1983–84 Supp. at 65 & n.34)).)

While *Evans* does not identify prejudice as a factor in the analysis where the theory of recovery is raised in the pleadings, *see supra* pp. 7-8, even if the Court assumes the validity of Defendant's proposition that prejudice is a consideration in the circumstances presented here, this is a case similar to *Griffith* where the court found that "any prejudice to the defendants in this case resulting from their failure to introduce additional evidence showing their lack of willful conduct will be remedied by the fact that they will have another

opportunity to introduce evidence [supporting a defense against punitive damages]."

*Griffith*, 607 F. Supp. at 1001; *see also Cunningham by Cunningham v. Quaker Oats Co.,*

*Fisher-Price Div.*, 107 F.R.D. 66, 72 (W.D.N.Y. 1985) ("If a defendant is fully apprised of the

conduct which has given rise to the action, his ability to defend will not be impaired.").

Here, Defendant "is fully apprised of the conduct which has given rise to this action" and it

will have an opportunity at trial to introduce evidence against an award of punitive damages,

i.e., evidence countering Plaintiff's claim that Defendant acted recklessly.  Notably,

Defendant does not argue otherwise—it mentions prejudice in the abstract but not in the

context of this case.  (*See* Doc. 68.)  Thus, if the Court were to assume *arguendo* that

prejudice to a defendant is a consideration even when the relief sought is based on a theory

of recovery set out in the relevant complaint, this assumption would not lead to a different

result because Defendant does not provide the basis for prejudice here and caselaw

supports the conclusion that Defendant would be unable to do so.

## B.  Timeliness of Financial Discovery

Plaintiff maintains that financial wealth discovery may be conducted following the

close of fact discovery "because such an intrusive disclosure is not appropriate until there is

a reasonable evidentiary basis to support the presentation of punitive damages to the jury."

(Doc. 63 at 3.)  Defendant responds that Plaintiff does not address the Court's key

consideration in addressing Plaintiff's request for financial wealth discovery after the

established discovery deadline, i.e., whether Plaintiff has shown good cause for his

discovery request fourteen months after the close of discovery pursuant to Rule 16 of the

Federal Rules of Civil Procedure.  (Doc. 68 at 2.)  The Court concludes that Plaintiff has not

shown good cause for his delayed request.

Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with

the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "To obtain an extension of

a discovery deadline, a movant must show 'good cause' under Fed. R. Civ. P. 16(b)(4),

which includes both an explanation of why more time is needed and a showing that the

movant diligently sought the discovery she now seeks to secure beyond the

deadline."[5]  *See Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 221–22 (3d Cir.

2014) (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d

Cir.2010)).  As explained by another district court in this Circuit,

> [t]he "good cause" inquiry "focuses on the moving party's burden to show due
> diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84
> (3d Cir. 2010). In the context of requests to extend deadlines, courts have
> defined "good cause" to include "circumstances beyond the control" of a
> party. *See Partners Coffee Co., LLC v. Oceana Servs. and Prods. Co.*, No. 09-
> CV-236, 2010 U.S. Dist. LEXIS 41695 at *10, 2010 WL 1726829, at *3 (W.D.
> Pa. Apr. 28, 2010); *see also Lord v. Consolidated Rail Corp.*, No. 13-784, 2015
> U.S. Dist. LEXIS 142119 at *9, 2015 WL 6163951, at *1 (D.N.J. Oct. 19, 2015)
> ("A court may find good cause to amend the scheduling order where the
> movant learns of the facts supporting [the motion] after expiration of the
> relevant filing deadline [.]") (internal quotations omitted). In the context of
> requests to reopen discovery, "[t]he decision whether to reopen discovery is
> committed to the sound discretion of the district court." *Trask v. Olin Corp.*, 298
> F.R.D. 244, 267 (W.D. Pa. 2014).

*Courtney v. Ivanov*, Civ. A. No. 3:13-227, 2016 WL 1367755, at *2 (W.D. Pa. April 6, 2016)):

*see also Cramer v. Kerestes*, Civ. A. No. 3:15-CV-1360, 2020 WL 1233630, at *2 (M.D. Pa.

Mar. 13, 2020) (quoting *Kerestes*, 2016 WL 1367755, at *2).  *Cramer* set out the following

relevant factors: "'(1) whether the moving party's lack of diligence or the opposing party's

conduct contributed to the delay; (2) potential prejudice caused by the discovery extension;

and (3) any other factors the trial court, in its discretion, determines to be relevant.'"  2020

WL 1233630, at *2 (quoting *Trask*, 298 F.R.D. at 267).[2]

As to the first factor, the Court concludes that Plaintiff's lack of diligence is

responsible for the delay in seeking financial discovery.  As per his argument regarding

potential entitlement to punitive damages based on his gross negligence/recklessness

claim, Plaintiff knew that he would be able to seek punitive damages when he filed his

Amended Complaint (Doc. 24) on October 23, 2018.  In contravention of Rule 16, Plaintiff

apparently *sua sponte* assumed that he could seek financial discovery at a later stage of the

litigation in that he never sought to amend the Order issued on September 10, 2018,

extending the discovery deadline to December 1, 2018 (Doc. 20 ¶ 1) and, thereafter, he

never sought leave of court to reopen discovery.  Notably, at the December 19, 2019, Trial

Scheduling Conference, the parties agreed on a trial date of June 8, 2020, and there was no

discussion of the need for additional discovery.  Though Plaintiff implies that his request for

financial discovery was timely because he served Defendant with financial discovery based

---

[2] The Third Circuit Court of Appeals has stated that "we will not interfere with the discretion of the district court by overturning a discovery order absent a demonstration that the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible." *Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015) (internal quotation and citation omitted).

on the Court's summary judgment opinion issued on December 12, 2019, (Doc. 44), in addition to the fact that Plaintiff did not seek the Court's permission to seek additional discovery as required by Rule 16(b)(4), by his own admission Plaintiff requested the discovery over a month after the Trial Scheduling Conference (*see* Docs. 50 at 2; Doc. 63 at 4), and he did not bring the matter to the Court's attention until April 22, 2020—approximately two months after Defendant objected to the requested discovery (*see* Doc. 50 at 2) and approximately six weeks before the trial was set to commence on June 8, 2020.

Furthermore, Plaintiff had presumably availed himself of the opportunity to obtain the substantive facts supporting his gross negligence/recklessness claim by the close of discovery, yet he did not seek to reinstate Peak Resorts, Inc., JFBB's parent company (*see* Doc. 9 ¶ 3), as a defendant in the action which was allowed by the parties' stipulation (Doc. 14) approved by Order of June 12, 2018 (Doc. 15).  As set out above, the parties agreed in the stipulation that "if discovery reveals that Defendant [Peak Resorts, Inc.] dismissed herein had any involvement or responsibility for the accident or damages subject of the instant dispute, then, upon notice to defense counsel, it can be renamed and be made a party to this lawsuit regardless of the statute of limitations" (Doc. 14 at 1-2).  It can be inferred from Plaintiff's failure to amend to reinstate Peak Resorts, Inc., as a defendant in the action that he did not find that discovery revealed that Big Boulder's parent company had "any . . . responsibility for the . . . damages" in the instant dispute.  Further, on the facts

presented by Plaintiff, Vail's purchase of Big Boulder in September 2019 (*see* Doc. 50 at 2) is of no legal significance in the discovery matter at issue here because Plaintiff did not seek leave to add Vail Resorts, Inc., as a party to this action.

The foregoing summary shows that this is not a case where the failure to seek financial discovery was due to "circumstances beyond the control" of Plaintiff. *Partners Coffee Co.*, 2010 WL 1726829, at *3. Nor is this a case where Plaintiff learned of the facts supporting his current request for financial discovery after the expiration of the relevant filing deadline. *Lord*, 2015 WL 6163951, at *1. Finally, nothing suggests that Defendant's conduct contributed to the delay. *Trask*, 298 F.R.D. at 267. Therefore, the Court concludes that the first relevant factor weighs against finding good cause for Plaintiff's late discovery because Plaintiff was responsible for the delayed request for financial discovery.

The Court also finds that the second factor, prejudice caused by the discovery extension, weighs against finding good cause. This case has moved to a different phase of the proceedings with a pretrial schedule issued (Doc. 47) and the parties now addressing pending motions in limine (Docs. 53-57). Due to the COVID-19 pandemic, the Court is currently operating under the Continuity of Operations Plan ("COOP") and General Orders No. 2020-01 and 2020-10 which continued all in-court proceedings through May 31, 2020.[3]

---

[3] General Order No. 2020-01, was signed by the Chief Judge of the Middle District of Pennsylvania on March 13, 2020. It continues "all hearings and proceedings in all civil and criminal matters within sixty (60) days of this [General Order] that would involve the physical presence of counsel or any party or individual before the Court." General Order No. 2020-10 extended the continuance through May 31, 2020. (Copies of the full General Orders are available on the website of the Middle District of Pennsylvania.)

Although this case is set for trial to commence on June 8, 2020 (Doc. 47 ¶ 1), a date for the resumption of jury trials has not yet been established.  However, as soon as conditions allow, a jury trial will be held in this matter.  In sum, the Court views this case as ready for trial without a compelling need for further discovery.

Regarding the third factor, i.e., consideration of other facts the Court may deem relevant, as will be discussed in the next section of this Memorandum Opinion, a decision to deny the requested discovery does not preclude Plaintiff from pursuing a claim for punitive damages at trial.

## C.  Evidence of Defendant's Wealth

The final question for the Court's consideration is whether Plaintiff can pursue a claim for punitive damages in the absence of evidence of Defendant's wealth.  For the reasons that follow, the Court concludes that Plaintiff need not present evidence of Defendant's wealth to support an award of punitive damages.

Pursuant to the plain language of § 908(2) of the Restatement (Second) of Torts, "[i]n assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant."  *Id.*; *see also Vance v. 46 & 2, Inc.*,

---

The Middle District of Pennsylvania has also implemented the Continuity of Operations Plan ("COOP") designed to assure the health and safety of all court employees, litigants, counsel, related agency personnel and citizenry who have business before the United States District Court for the Middle District of Pennsylvania.

920 A.2d 202, 206 (Pa. Super. Ct. 2007).  While § 908(2) *allows* a jury to consider the wealth of the defendant, *In re Lemington Home for the Aged*, 777 F.3d 620 (3d Cir. 2015), clearly answers the question of whether such evidence is *necessary* to support an award of punitive damages.  Where the defendants argued that an award for punitive damages could not stand "because the jury was not presented with any evidence regarding the wealth of any Defendant and therefore could not evaluate what amount of punitive damages would serve as an appropriate deterrent," 777 F.3d at 631, the Court of Appeals for the Third Circuit stated that

> [t]he wealth of a defendant is indeed one of the three factors that "can properly [be] consider[ed]" by the trier of fact in assessing an award of punitive damages under § 908(2). Nonetheless, that section's use of the permissive "can," rather than the compulsory "must," suggests that evidence of a defendant's wealth is not a necessary prerequisite to an award of punitive damages. The weight of Pennsylvania case law agrees that "evidence of a tortfeasor's wealth is not a necessary condition precedent for imposition of an award of punitive damages." *Vance v. 46 and 2, Inc.,* 920 A.2d 202, 207 (Pa.Super.Ct.2007) (collecting cases).

777 F.3d at 631-32.  After a thorough review of relevant caselaw, the Circuit Court held that "Pennsylvania law does not require evidence of a defendant's wealth before punitive damages may be imposed." *Id.* at 633.

On the basis of the Third Circuit's holding in *Lemington*, Plaintiff may pursue a claim for punitive damages at trial without evidence of Defendant's wealth.  Therefore, with the Court's decision that he has not shown good cause for his request to reopen discovery,

Plaintiff is not deprived of the relief to which he may be found to be entitled at the upcoming trial of the above-captioned matter.

## IV.  CONCLUSION

For the reasons discussed above, Plaintiff's request to conduct financial discovery will be denied and Plaintiff may pursue a claim for punitive damages as an acceptable form of relief for the Gross Negligence/Recklessness claim set out in his Amended Complaint. An appropriate Order is filed simultaneously with this Memorandum Opinion.


___*s/ Robert D. Mariani*_____
Robert D. Mariani
United States District Judge